UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS MURIEL HERRERA,

                              Petitioner,

          - against -

THOMAS LAVALLEY,

                              Respondent.

10 Civ. 5543 (CS) (PED)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE CATHY SEIBEL, UNITED STATES DISTRICT JUDGE:**

## I. INTRODUCTION

On November 12, 2007, an Orange County jury convicted petitioner Luis Muriel Herrera ("petitioner" or "defendant") of first degree attempted robbery, first degree burglary, second degree assault and fourth degree criminal possession of a weapon (a metal knuckle knife). Petitioner's conviction stemmed from a home invasion in the City of Newburgh, New York on November 6, 2006.[1] He was sentenced on February 21, 2008 to concurrent, determinate terms of imprisonment of ten years (attempted robbery), twelve years (burglary), five years (assault) and one year (weapon possession), along with concurrent terms of five years post-release supervision on each of the felony counts. Petitioner is currently incarcerated at the Fishkill Correctional Facility in Beacon, New York.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Said petition is before me pursuant to an Order of Reference

---

[1] Petitioner was contemporaneously acquitted of charges which stemmed from a home invasion in the Town of Newburgh, New York on November 27, 2006. He was also acquitted of one count of fourth degree criminal possession of a weapon (specifically, a firearm) in conjunction with the November 6th incident.

dated August 3, 2010 (Dkt. #3).  For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[2]

### A.    The Crime

During the summer of 2006 through November 2006, petitioner frequented an apartment known as the "weed house" located at 178 Renwick Avenue in the City of Newburgh, New York.  The "weed house" was also frequented by the Velasco brothers (Omario and Ricardo), Ramberto Vega and Angel Lahoz.

At the "weed house" on November 6, 2006, petitioner, Ricardo Velasco and Vega planned to rob the landlord of a building located at 84 City Terrace.  At approximately 5:00 p.m. that evening, Ricardo drove petitioner, Vega and Omario Velasco to 84 City Terrace.  Omario remained in the car while the others exited the vehicle.  Ricardo knocked and Jesus Mejia, the building superintendent, opened the door.   Petitioner and Vega pushed past Mejia and barged into the apartment.  Vega then pistol-whipped Mejia.  Ricardo left the apartment and returned to the car.  Petitioner threatened Mejia with a knife and demanded money.  Petitioner and Vega left when they discovered Mejia had no money.  They returned to the car and the four men drove back to the "weed house."

### B.    Pre-Trial Proceedings

---

[2]     Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. #2), respondent's Affirmation in Opposition to a Petition for a Writ of Habeas Corpus (Dkt. #12), Respondent's Memorandum of Law (Dkt. #13), Respondent's Record of Exhibits ("Resp. Exhs.")(Dkt. #14) and Petitioner's Reply (Dkt. #23).

The grand jury returned its indictment against petitioner on April 27, 2007.[3]  On April 30, 2007, petitioner appeared with counsel and entered a plea of not guilty.

On or about June 18, 2007, petitioner's counsel filed an omnibus motion seeking various forms of pretrial relief including suppression of identification evidence.  By Decision and Order dated July 21, 2007, the Orange County Court (De Rosa, J.) *inter alia* ordered a hearing pursuant to New York Criminal Procedure Law ("CPL") §710.60(4) to determine the admissibility of any identification evidence.  The hearing was held on July 24, 2007, during which the sole witness, Detective Steven Sager, testified as follows:

In April 2007, Detective Sager was employed by the Town of New Windsor Police Department and assigned to a Joint Crime Task Force charged with investigating numerous residential robberies (H. 7).[4]  On April 19, 2007, in conjunction with that investigation, Detective Sager conducted two separate interviews: the first with Ricardo Velasco and the second with Omario Velasco (H. 8, 12).  Ricardo Velasco stated that he and a man he knew as "Junebo" met for the first time during the previous summer at the "weed house" (H. 22).  Ricardo and Junebo "hung out" together at the "weed house" where they smoked marijuana, played video games and planned robberies (H. 22).  For the purpose of confirming Junebo's identity, Detective Sager showed Ricardo a six-person photo array and asked him to identify the person he knew as Junebo (H. 9-10).  Ricardo selected person number one, a photo of petitioner (H. 10-11).  During the second interview, Omario Velasco stated that he "hung out" with Junebo at the "weed house"

---

[3]     Petitioner was originally charged with first degree robbery (count seven) in conjunction with the November 6th incident.  At the close of the People's case, the prosecution consented to amend count seven to attempted robbery in the first degree.

[4]     Numbers in parentheses preceded by the letter "H" refer to pages from the transcript of the pretrial hearing (Dkt. #7).

on multiple occasions (H. 12-13, 23).  Omario also stated that he had been with Ricardo and

Junebo on one occasion when a crime was committed (H. 23).  Detective Sager showed Omario

a fresh, unmarked copy of the same photo array shown to Ricardo and asked Omario if he could

identify the person in the photos he knew as Junebo (H. 13-14).  Omario selected petitioner's

photo located in the array as person number one (H. 14).

 Following Detective Sager's testimony, petitioner's counsel argued that the photo array

was unduly suggestive because petitioner's photo depicted the only balding person with facial

hair (H. 26).  The Court issued an oral decision holding the identification admissible at trial

because "neither the procedure nor the photo array was overly suggestive and was basically in

the nature of a confirmatory ID in any event" (H. 29).

## C. <u>Request for Adjournment</u>

 Jury selection commenced on the morning of November 13, 2007.  At approximately

1:30 p.m., as proceedings resumed following a lunch break, defense counsel requested a two-

week adjournment of trial (T. 61-63).[5]  Defense counsel stated that he had been assigned to the

case two weeks prior and had received the file from previous counsel one week prior (T. 61).  He

specifically noted that his investigator had unsuccessfully attempted to locate the victim of the

November 27th robbery at the address specified in the indictment (2556 Route 9W, Cornwall,

New York) which, defense counsel learned that morning, had been amended to 706 Gardnertown

Road in the Town of Newburgh (T. 62).  Indeed, the indictment had been amended in open court

on July 24, 2007 and the corrected information matched the address contained in the bill of

particulars (T. 62).  Defense counsel argued that he had prepared for trial based upon the

---

[5] Numbers in parentheses preceded by the letter "T" refer to pages from the trial transcript
(Dkt. #8, #9, #10 and #11).

unamended indictment and, although he was aware of the address listed in the bill of particulars, for strategic reasons he declined to ask the district attorney about the discrepancy (T. 62-63). The trial court denied defense counsel's request for an adjournment because jury selection was already underway and, if the request was granted, the court would have to declare a mistrial (T. 64). Judge De Rosa also noted that defense counsel's investigator was "still employed" and that it was unlikely that the People would finish their case in three days (T. 64).

**D.**     **Direct Appeal**

Petitioner (by and through counsel) timely appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) the evidence was insufficient as a matter of law to corroborate the accomplice testimony and to establish that the knife (People's exhibit one) was a "metal knuckle knife" as defined in New York Penal Law § 265.00 (5-b) (Resp. Exhs., Exh. 6, at 43-45, 68-69);[6] (2) petitioner was deprived of effective assistance of trial counsel due to the trial court's denial of an adjournment and trial counsel's failure to move for dismissal of the counts stemming from the November 6th incident (counts seven through eleven) based upon the lack of independent corroboration of the accomplice testimony (id. at 55-57, 62-65); (3) the identification procedure was unduly suggestive because (a) the detective indicated that a photo of petitioner was in the array and (b) the witnesses were shown the photo array five months after the crimes were committed (id. at 58-59); (4) petitioner's sentence was harsh, excessive and retaliatory (id. at 60-62); (5) petitioner was deprived of his fundamental right to be present at a material stage of the proceedings, *i.e.* during an off-the-record conversation between the court and Juror McCartney (id. at 65-67); and (6) the trial court failed to enter a conviction

---

[6]     Hereinafter, all citations to "Exh. ___" refer to exhibits found in Respondent's Record of Exhibits.

and sentence as to count eleven (criminal weapon possession–knife) and, instead, illegally sentenced petitioner on count ten (criminal weapon possession–gun) as to which he was acquitted (id. at 67-68). By Decision and Order dated December 22, 2009, the Second Department affirmed petitioner's judgment of conviction. People v. Muriel-Herrera, 68 A.D.3d 1135, 892 N.Y.S.2d 150 (2d Dep't 2009). Petitioner, by and through counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, wherein he sought review of all of the claims raised in his appellate brief (Resp. Exhs. 161-63). The Court of Appeals denied petitioner leave to appeal on April 26, 2010. People v. Muriel-Herrera, 14 N.Y.3d 843, 927 N.E.2d 570, 901 N.Y.S.2d 149 (2010). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.

### E.      The Instant Petition and Application for Stay of Proceedings

Petitioner timely[7] filed the instant Petition for a Writ of Habeas Corpus on or about June 30, 2010, wherein he seeks habeas review of the claims he raised on direct appeal. By letter dated October 12, 2010 (Dkt. #16), petitioner requested a stay of the proceedings to allow him to exhaust certain unidentified claims and thereafter file an amended petition. By Order entered November 4, 2010 (Dkt. #17), the undersigned directed petitioner to identify, within thirty days of said Order, all grounds set forth or to be set forth within his state petitions. On or about December 4, 2010, petitioner submitted a document entitled "Notice of Motion to Vacate Judgment & Set Aside Sentence" which identifies five claims to be (or that were) asserted in a CPL § 440.10 motion in Orange County Supreme Court: (1) the trial court erroneously prevented petitioner from introducing certain exculpatory evidence; (2) the indictment was improperly

---

[7]      See 28 U.S.C. § 2244(d)(1).

amended; (3) trial counsel was ineffective because he did not move to dismiss the counts stemming from the November 6th incident (counts seven through eleven); (4) the verdict is a "nullity" because no reasonable jury could have found petitioner guilty; and (5) petitioner's sentence violates due process. By Memorandum and Order dated January 11, 2011 (Dkt. #18), the undersigned stayed the proceedings pending the exhaustion of said claims and directed petitioner, within thirty days after a final state decision on said claims, to supplement the instant petition with any of the newly-exhausted claims.

By Decision and Order dated March 22, 2011, the County Court (De Rosa, J.) held as follows: (1) the majority of grounds cited appear on the record and either were or could have been raised on direct appeal (citing CPL § 440.10(2)); (2) petitioner's argument as to the issue of exculpatory evidence is meritless because the investigator's report and victim's statement were marked as exhibits at trial and used by defense counsel during cross-examination of the victim; and (3) because it appeared the transcript of the sentence was in error, the County Court set aside any sentence as to count ten and imposed sentence *nunc pro tunc* as to count eleven. Memo Endorsed Letter from respondent dated July 11, 2012 (Dkt. #21). Petitioner did not seek leave to appeal; respondent, however, sought reargument as to the County Court's Order setting aside petitioner's misdemeanor sentence. Id. By Decision and Order dated June 21, 2011, the County Court granted respondent's motion and vacated the portion of its previous order setting aside the sentence "as it appears the issue was previously addressed by the Appellate Court." Id. Petitioner thereafter served respondent with a copy of his application seeking leave to appeal the June 21st Order. Id. By Memorandum Endorsement dated July 17, 2012 (Dkt. #21), the undersigned directed petitioner to advise this Court, in writing, by August 17, 2012: (1) whether there was any reason the stay should not be lifted; and (2) whether he intended to amend the

7

instant petition.  Petitioner failed to respond.  Accordingly, on September 24, 2012, the undersigned ordered the stay lifted (Dkt. #22).

On or about October 8, 2012, petitioner submitted a Reply (Dkt. #23), wherein (1) he conceded that, because he did not perfect his appeal, the claims asserted in his § 440.10 motion were unexhausted and deemed procedurally barred, but (2) he argued that this Court should excuse his procedural default and review said claims due to his actual innocence.  The Court notes, however, that petitioner did not file an Amended Petition despite the Court's prompting. Thus, the only claims presented for habeas review–*ergo* the only claims addressed in this Report and Recommendation–are those raised in his original petition.[8]


## III. DISCUSSION

### A.   Applicable Law

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

---

[8]    In any event, petitioner would not benefit were the Court to construe his Reply as an Amended Petition and thus consider his § 440.10 claims on habeas review.  He has not supported his claim of actual innocence with any "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Accordingly, petitioner fails to demonstrate that a fundamental miscarriage of justice excuses his procedural default.  See Dowtin v. Cohen, 179 Fed. App'x 737 (2d Cir. 2006) and discussion of procedural default, *infra*.

accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), are summarized below.

    1.  *Timeliness*

    The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction.  <u>See</u> 28 U.S.C. § 2244(d)(1).  The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or
> the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in
> violation of the Constitution or laws of the United States is removed, if the applicant was
> prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the
> Supreme Court, if the right has been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have
> been discovered through the exercise of due diligence.

<u>Id.</u>

    The AEDPA's statute of limitations is tolled during the pendency of a properly filed

application for state post-conviction relief, or other collateral review, of a claim raised in the

petition.  <u>See id.</u> § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling,

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

filing."  <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2562 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544

U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and

exceptional circumstance[s]," <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)

(internal quotation marks omitted), which have "prevented [the petitioner] from filing his

petition on time," <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." <u>Id.</u>

> 2.    *Exhaustion*

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see</u> 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); <u>id.</u> § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Baldwin</u>

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). To this end, the Second Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

11

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3.    *Procedural Default*

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

4.  *Standard of Review*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

13

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The

14

petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C.
§2254(e)(1).

**B.    <u>Ineffective Assistance of Trial Counsel Claims</u>**

Petitioner claims he was deprived of effective assistance of trial counsel due to the trial
court's denial of an adjournment and trial counsel's failure to move for dismissal of the counts
stemming from the November 6th incident (counts seven through eleven) based upon the lack of
independent corroboration of the accomplice testimony.  The Supreme Court has stated that
"[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so
undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  Under
<u>Strickland</u>'s two-pronged test, petitioner will prevail on his ineffective assistance claim if he
demonstrates (1) that his attorney's performance "fell below an objective standard of
reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the
result of the proceeding would have been different." <u>See id.</u> at 694.  Both prongs of the test must
be met in order for petitioner to prevail.  <u>United States v. Campbell</u>, 300 F.3d 202, 214 (2d Cir.
2002).  Moreover, "judicial scrutiny of counsel's performance must be highly deferential . . . [A]
court must indulge a strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.

*1.  Denial of Request for Adjournment*

In the middle of jury selection, defense counsel requested a two-week adjournment of
trial on the ground that his investigator had unsuccessfully attempted to locate the victim of the
November 27th robbery at the address specified in the indictment (2556 Route 9W, Cornwall,
New York) which, defense counsel learned that morning, had been amended to 706 Gardnertown

Road in the Town of Newburgh (T. 62). The trial court denied defense counsel's request for an adjournment because jury selection was already underway and, if the request was granted, the court would have to declare a mistrial (T. 64). Petitioner alleges that he is entitled to habeas relief because the trial court's refusal to grant an adjournment ultimately deprived petitioner of effective assistance of trial counsel. However, because petitioner was acquitted of all charges connected to the November 27th robbery, he cannot demonstrate that he was prejudiced by the trial court's ruling. The Appellate Division's decision rejecting this claim, therefore, was not contrary to, nor did it amount to an unreasonable application of, federal law as established by the Supreme Court. Accordingly, I conclude, and respectfully recommend, that petitioner is not entitled to habeas relief on this claim.

   *2. Failure to Move for Dismissal of Counts 7-11*

   Petitioner also argues that trial counsel was ineffective because he failed to move for dismissal of the counts stemming from the November 6th incident based upon the lack of independent corroboration of the accomplice testimony. Under New York law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law § 60.22(1). Petitioner's claim fails, however, because he cannot demonstrate any prejudice resulting from his counsel's failure to move for dismissal of the counts associated with the November 6th incident.

   Petitioner's ineffective assistance claim is grounded upon the assumption that, if his attorney had moved to dismiss the counts at issue based upon a lack of corroborative non-accomplice testimony, those counts would have been dismissed. There is nothing to suggest,

however, that this would have been the result but for counsel's deficient performance.  Indeed,

the prosecution offered non-accomplice corroborative testimony which connected petitioner to

the November 6th robbery.  Angel Lahoz testified that, on November 6, 2006, he was at the

"weed house" with the Velasco brothers when Ricardo Velasco received a phone call from

Ramberto Vega (T. 369).  Ricardo and Omario left to pick up Vega (T. 369).  Petitioner arrived

at the "weed house" and asked for Vega and Ricardo; Lahoz told petitioner that Ricardo and his

brother left to pick up Vega, and petitioner left (T. 369).  Lahoz testified that Vega and petitioner

returned to the "weed house" about forty-five minutes later, and that Lahoz overheard them

discussing what had happened at 84 City Terrace (T. 369-70).  Lahoz heard petitioner say "they

had made a mistake in not sending someone from the back, around the back" (T. 370-71).  Lahoz

also testified that he last saw petitioner that morning (on the day Lahoz testified), at which time

petitioner asked Lahoz "not to say anything" (T. 371-72).

　　　　Further, any ultimate prejudice to petitioner was ameliorated by the trial court's

instruction to the jury regarding accomplice testimony:

> Now, under our law, and only with respect to counts seven, eight, nine, ten
> and eleven, Ricardo Velasco, who testified here, is an accomplice.  He is an
> accomplice, because there's evidence that he participated in and was convicted of
> a crime based upon conduct involved in the allegations here against the defendant.
> Our law is especially concerned about the testimony of an accomplice who
> implicated another in the commission of a crime, particularly when the
> accomplice has received, expects or hopes to receive a benefit in return for his
> testimony.
>     Therefore, our law provides that a defendant may not be convicted of any
> crime upon the testimony of an accomplice, unless it is supported by corroborative
> evidence tending to connect the defendant with the commission of the crime.
>     In other words, even if you find the testimony of Ricardo Velasco to be
> believable, you can't convict the defendant solely upon that testimony, unless you
> also find that it was corroborated by other evidence tending to connect the
> defendant with the commission of the crime.  The corroborative evidence need not
> by itself prove the defendant guilty.  What the law requires is that there be

evidence, apart from the testimony of the accomplice, that tends to connect the
defendant with the commission of the crime charged in such a way as may
reasonably satisfy you that the accomplice is telling the truth about the
defendant's participation in that crime.

(T. 749-50.)  In sum, the state court's decision denying petitioner's ineffective assistance of

counsel claim was neither contrary to, nor an unreasonable application of, federal law.

Accordingly, I conclude and respectfully recommend that petitioner is not entitled to habeas

relief on the grounds of ineffective assistance of counsel.[9]

## C.    Insufficient Evidence Claims

Petitioner claims that the evidence was insufficient as a matter of law to corroborate the

accomplice testimony and to establish that the knife (People's exhibit one) was a "metal knuckle

knife" as defined in New York Penal Law § 265.00 (5-b).  Petitioner presented said

arguments to the Second Department in Points I and IX of his brief on direct appeal; the

Second Department affirmed petitioner's judgment of conviction and stated, *inter alia*:

The defendant's contention that the evidence was legally insufficient to establish his guilt
beyond a reasonable doubt is unpreserved for appellate review, as defense counsel merely made
a general motion for a trial order of dismissal based upon the People's alleged failure to make
out a prima facie case (*see* CPL 470.05(2); *People v. Hawkins*, 11 N.Y.3d 484, 491-492, 872
N.Y.S.2d 395, 900 N.E.2d 946).  In any event, viewing the evidence in the light most favorable
to the prosecution . . ., we find that it was legally sufficient to establish the defendant's guilt
beyond a reasonable doubt.

Muriel-Herrera, 892 N.Y.S.2d 150, 151 (internal citation omitted).

--------

[9]      To the extent petitioner's argument may be construed to assert an independent claim that
he was convicted based upon uncorroborated accomplice testimony, said claim is not cognizable
on habeas review.  Gilbo v. Artus, No. 10–CV–0455, 2013 WL 160270, at *9 (N.D.N.Y. Jan. 15,
2013).  See also United States v. Florez, 447 F.3d 145, 155 (2d Cir.2006) (no federal
constitutional rule requiring the corroboration of accomplice testimony); Willams v. Marshall,
09 Civ. 7411, 2011 WL 2175810, at *14 (S.D.N.Y. Mar. 30, 2011) (accomplice-corroboration
claim is "purely an artifact of New York statutory law" and does not implicate due process).

New York's contemporaneous objection rule (codified at CPL § 470.05(2)) "provides that, with a few exceptions not applicable here, New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." See Downs v. Lape, 657 F.3d 97, 103 (2d Cir. 2011).[10]  More specifically, in order to preserve his insufficient evidence claim, petitioner was required to make a motion to dismiss at the close of the prosecution's case. Scission v. Lempke, 784 F. Supp.2d 237, 243-44 (W.D.N.Y. 2011).  "Moreover, New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged." Id. at 244 (citing People v. Gray, 86 N.Y.2d 10, 20-22, 652 N.E.2d 919, 629 N.Y.S.2d 173 (1995)). See also Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically* focus on the alleged error.") (citation omitted; emphasis added in *Richardson*).

The record here reveals that, at the close of the People's case, defense counsel made only a general motion to dismiss which did not preserve petitioner's insufficient evidence claim (T. 579-80).  The Second Department's decision contained a plain statement that petitioner's insufficient evidence claim was "unpreserved."[11]  Although the state court also rejected said

---

[10]     CPL 470.05(2) states, in relevant part:  "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. . . ."

[11]     "[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 810 n. 4 (2d Cir. 2000).

claim on its merits, the Appellate Division explicitly invoked an "independent" state procedural ground as a basis for its decision.  Ordinarily, federal review is precluded where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  Carrion v. Smith, 549 F.3d 583, 587 (2d Cir. 2008) (quotation and citation omitted).  The Second Circuit has consistently recognized New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review.  See, e.g., Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Brown v. Ercole, 353 Fed. App'x 518, 520 (2d Cir. 2009); Richardson, 497 F.3d at 218; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules").

Moreover, applying the *Cotto* "guideposts," Cotto, 331 F.3d at 240, the state court's application of its own procedural rule was not "so 'exorbitant' as to render it inadequate to preclude habeas review of the federal claim."  See Whitley, 642 F.3d at 287-88.  As to the first *Cotto* consideration, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court–the violation only first  occurred when defendant raised an argument on appeal that he had not raised earlier."  See Garvey, 485 F.3d at 719.  The second *Cotto* consideration also weighs against petitioner.  As noted above, New York appellate courts routinely hold that a motion to dismiss for insufficient evidence must be "specifically directed at the alleged error."  See People v. Carncross, 14 N.Y.3d 319, 324-25, 927 N.E.2d 532, 901 N.Y.S.2d 112 (2010); People v. Hawkins, 11 N.Y.3d 484, 491-492,  900 N.E.2d 946, 872 N.Y.S.2d 395 (2008); People v. Finger, 95 N.Y.2d 894, 895, 739 N.E.2d 290, 716 N.Y.S.2d 34 (2000).  Further, petitioner does not argue that "unique circumstances" prevented his

20

compliance.[12]  The third *Cotto* consideration similarly disfavors petitioner because, just as in *Garvey*, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but rather "the very essence" of the rule.  See *Garvey*, 485 F.3d at 720.  Finally, petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a factual record supporting its decision that could then properly be reviewed on appeal."  See *Whitley*, 642 F.3d at 290.

Because there is an adequate and independent finding by the Appellate Division that petitioner procedurally defaulted on the insufficient evidence claim he now asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  Petitioner, however, has failed to demonstrate cause or prejudice,[13] and there is no indication that this Court's failure to address the merits of the unpreserved claim would result in a fundamental miscarriage of justice.  Although petitioner asserts that he is actually innocent, he has not supported his claim of actual innocence with any "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Accordingly, I conclude and

---

[12]     *Compare* Lee, 534 U.S. at 380-88 (holding that the sudden, unanticipated, and unexplained disappearance of critical, subpoenaed witnesses on the last day of trial may excuse strict compliance with a state rule of procedure) *with* Garvey, 485 F.3d at 719 (quoting *Lee* and finding no unique circumstances that led to noncompliance).

[13]     Because petitioner's ineffective assistance claim based upon trial counsel's failure to move for dismissal of the counts stemming from the November 6th incident on the ground of uncorroborated accomplice testimony is meritless (as discussed above), petitioner may not rely on said alleged ineffective assistance of trial counsel as "cause" for the procedural default.

respectfully recommend that petitioner's procedural default bars federal review of his

insufficient evidence claim.[14]

**D.      Violation of Fundamental Right to be Present at a Material Stage of the Proceeding**

On the first day of trial, prior to the court's preliminary instructions to the jury, the trial

court spoke with juror number one, Miss McCartney, on the record in the presence of petitioner

and counsel (T. 207-10):

> THE COURT: I need Miss McCartney out here, juror number one.
> (Juror enters the courtroom.)
> THE COURT: All right.  Good morning, Miss McCartney.  You wanted to
> talk to us.
> SWORN JUROR: Well, I had just told Terri downstairs that this morning
> I was just extremely nervous.  So, she recommended that I talk to you.  I don't
> know why.
> THE COURT: Is it something we've said or done that made you nervous?
> SWORN JUROR: No.  I think it's just a little bit of the situation.  That's
> all.
> THE COURT: Well, you've never been on jury duty before?
> SWORN JUROR: No, I haven't.
> THE COURT: See, to be honest with you, that's not unusual.  You're
> sitting here and you're in a room and with people you don't yet know.  You will
> get to know the jurors by the time this is over. . . . So, I can understand why you
> might be nervous.  I mean, you're still going to be able to listen to the testimony
> and things like that; right?
> SWORN JUROR: Um-hum.
> THE COURT: All right.  I'll tell you what, what you're going to hear this
> morning is you're going to hear my preliminary instructions. . . . Then you're
> going to hear opening statements . . . .
> So, I mean, if you feel that you're getting very, very nervous, well, talk to
> us again, but, I mean, I can understand why you might be a bit nervous, because
> you've never done this before, but as long as you can listen and pay attention to
> what's going on, you'll find that - - and once you get to know your fellow jurors,
> which will happen quite quickly, usually it does, I think that would probably calm
> you down a bit.  So, we'll give this a shot here?
> SWORN JUROR: Um-hum.

---

[14]      Dismissal of claim for habeas relief on the ground of procedural default amounts to "a
disposition of the habeas claim on the merits."  Carvajal, 633 F.3d at 104.

> THE COURT: Do you have any questions, Mr. Heavner, for Miss McCartney?
> MR. HEAVNER: I have no questions.
> THE COURT: Mr. Brite?
> MR. BRITE: No.
> THE COURT: As a matter of fact, you can just take your seat right there, Miss McCartney, which would be seat number one, and we'll bring the rest of the jurors out.

At the close of proceedings later that day, after the jurors exited the courtroom, the trial court stated (T. 382): "I asked Miss McCartney if she had calmed down a bit. She said she was fine."

Petitioner contends he was deprived of his fundamental right to be present at a material stage of the proceedings, *i.e.* when the court asked Miss McCartney "if she had calmed down a bit." Petitioner presented said argument to the Second Department in Point VI of his brief on direct appeal; the Second Department categorized the claim as "defendant's remaining contention" and found it "unpreserved for appellate review and, in any event, [ ] without merit." Muriel-Herrera, 892 N.Y.S.2d at 152. For the reasons set forth in the previous section, the Second Department's statement constitutes an adequate and independent finding that petitioner procedurally defaulted on his "right to be present" claim. Further, petitioner has failed to demonstrate cause, prejudice or that he is actually innocent, and there is no indication that this Court's failure to address the merits of the unpreserved claim would result in a fundamental miscarriage of justice. Accordingly, I conclude and respectfully recommend that petitioner's procedural default bars federal review of his "right to be present" claim.

**E.      Unduly Suggestive Identification**

Petitioner asserts that his due process rights were violated when Ricardo and Omario Velasco, who independently identified petitioner from a six-person photo array, were permitted to identify petitioner in court. On direct appeal, petitioner argued that the identification

23

procedure was unduly suggestive because (a) the detective indicated that a photo of petitioner was in the array and (b) the witnesses were shown the photo array five months after the crimes were committed.  The Appellate Division denied said claim, holding:

> The evidence presented at the suppression hearing established that both witnesses had told the police that they knew the defendant well before they were asked to identify him in a photo array.  This demonstrated that the identifications were merely confirmatory. . . . Therefore, the County Court properly denied that branch of the defendant's motion which was to suppress identification testimony.

Muriel-Herrera, 892 N.Y.S.2d at 151 (citation omitted).

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable. . . . Generally, a witness will not be allowed to make an in-court identification if the authorities' pretrial photographic identification procedures were so impermissibly suggestive as to give rise to a *very substantial likelihood of irreparable misidentification*."  United States v. Douglas, 525 F.3d 225, 242 (2d Cir. 2008) (internal quotation marks and citations omitted) (emphasis in original).  It is well-settled that "[r]eliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment. . . . [and] our inquiry into the reliability of eyewitness identifications proceeds in two stages."  Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009).  First, the Court must determine whether the identification procedures "unduly and unnecessarily suggested that the defendant was the perpetrator."  Id. (quoting Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001)).  "Second, even if the initial identification was impermissibly suggestive, the admission of the evidence will nevertheless satisfy constitutional standards if the identification was independently reliable."  Wilson v. Heath, No. 10-CV-3814, 2013 WL 5530673, at *15 (E.D.N.Y. Sept. 30, 2013) (quoting Brisco, 565 F.3d at 88).

24

Whether identification procedures are unduly and unnecessarily suggestive "is a fairly permissive standard, and a [state] court applying this standard to the facts of a specific case is entitled to significant 'leeway' when [the habeas court] review[s] its decision for reasonableness." Richardson v. Superintendent of Mid–Orange Corr. Facility, 621 F.3d 196, 202 (2d Cir.2010) (citations and internal quotation marks omitted). Here, the Appellate Division's decision was based on a "New York rule that in-court identifications may be admissible despite prior suggestive procedures if the witness knew the defendant." Stallings v. Wood, No. 04-CV-4714, 2006 WL 842380, at *11 (E.D.N.Y. Mar. 27, 2006). "A New York 'court's invocation of the "confirmatory identification" exception is . . . tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is "little or no risk" that police suggestion could lead to a misidentification.'" Wilson, 2013 WL at *15 (quoting People v. Rodriguez, 79 N.Y.2d 445, 450, 593 N.E.2d 268, 583 N.Y.S.2d 814 (1992)).

Here, notably, petitioner does not allege that he was not acquainted with either Velasco brother prior to their identifications. Ricardo Velasco met petitioner (known to Ricardo as "Junebo") at the "weed house" eight or nine months prior to the photo array identification (H. 22), and they "hung out" together at the "weed house" where they smoked marijuana, played video games and planned robberies (H. 22). Prior to his photo array identification, Omario Velasco "hung out" with petitioner (known also to Omario as "Junebo") at the "weed house" on multiple occasions (H. 12-13, 23), and Omario had been with Ricardo and petitioner on one occasion when a crime was committed (H. 23). Thus, even if the photo array was impermissibly suggestive, the Velasco brothers' "prior acquaintance with [petitioner] established that the in-court identification[s were] reliable notwithstanding the prior photographic display." Espinal v. Duncan, No. 00 Civ. 4844, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (referring to single

25

photo display and citing United States v. Wade, 388 U.S. 218, 241–42 & n. 33 (1967)).  Cf.

Wiggins v. Greiner, 132 Fed. App'x 861, 865 n.3 (2d Cir. 2005) ("Under New York law, a

'confirmatory identification' from a single photograph does not implicate due process

concerns."); Wilson, 2013 WL at *15 (independently reliable identification by witness who

identified petitioner from a single photo, knew petitioner by the name "Black," saw petitioner

every day for several months when they sold cigarettes in the same area, conversed with

petitioner, knew he was married and knew he lived in Coney Island); Stallings, 2006 WL

842380, at *11 (although witness was shown a single photo of petitioner, witness had seen

petitioner more than ten times in the neighborhood and had taken out two orders of protection

against him; thus, his "longstanding familiarity with petitioner rendered his identification

independently reliable"); Martinez v. Artuz, No. 99 Civ. 5744, 2001 WL 540737, at *9

(S.D.N.Y. May 22, 2001) (where witness knew petitioner for three years, regularly spoke to him

and saw him daily, her "prior acquaintance with [petitioner] made the suggestiveness of any

identification procedure irrelevant because [the witness'] own familiarity with the [petitioner]

provided a reliable and independent basis for the identification"); Espinal, 2000 WL 1774960, at

*2 (witness knew petitioner by street and first name, knew where he lived, what car he drove,

and had seen him at least twenty times in the past year).  In sum, the Second Department's denial

of petitioner's due process claim was neither contrary to, nor an unreasonable application of,

federal law.  Accordingly, I conclude and respectfully recommend that petitioner is not entitled to

habeas relief on the ground that the photo identification process was unduly suggestive.

**F.**       **Illegal Sentence**

26

Petitioner was charged with two counts of fourth degree criminal possession of a weapon pursuant to New York Penal Law § 265.01(1):  Count 10 alleged that petitioner possessed a firearm; Count 11 alleged that he possessed a metal knuckle knife.[15]  Petitioner was acquitted of Count 10 but convicted of Count 11.  At sentencing, the trial court erroneously imposed a one-year sentence "[a]s to Count 10," to run concurrently with all other sentences.  Transcript of Sentencing (attached to Trial Transcript Vol. 4), Dkt. #11, at 8.  Petitioner challenged said "illegal sentence" on direct appeal; the Appellate Division held as follows:

> The courts possess an inherent power to correct clerical errors (*see People v. Minaya*, 54 N.Y.2d 360, 364 [1981], *cert denied* 455 U.S. 1024 [1982]).  "This power exists in criminal as well as civil cases and has been held specifically applicable to errors relating to sentence" (*id.* at 364 [citation omitted]).  Here, the court erroneously stated that it was sentencing the defendant for criminal possession of a weapon in the fourth degree in connection with his conviction on count 10 of the indictment.  In fact, the defendant was acquitted of count 10, but convicted of criminal possession of a weapon in the fourth degree on count 11.  The court properly corrected this error in the defendant's Uniform Sentence and Commitment sheet, and we see no need to remit the matter for resentencing.

Muriel-Herrera, 892 N.Y.S.2d at 151.

Petitioner reasserts his "illegal sentence" claim on habeas review.  However, petitioner does not allege any constitutional violation arising from his sentencing; indeed, he cites no law (state or federal) in support of his claim.[16]  Because petitioner has not presented his "illegal sentence" claim in federal constitutional terms, said claim is not cognizable on federal habeas review.  See Estelle, 502 U.S. at 68; Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Accordingly, I conclude and

---

[15]   Both Counts arose from the November 6th incident.

[16]   Petitioner incorporates the argument set forth in his appellate brief, which consisted only of pointing out the sentencing error and asking the Appellate Division to vacate his conviction and sentence on Counts 10 and 11.  Exh. 6 at 67-68.

respectfully recommend that petitioner's "illegal sentencing" claim does not provide a basis for habeas relief.[17]

## G.   Harsh, Excessive and Retaliatory Sentence

Petitioner argues that his sentence was harsh, excessive and in retaliation for the exercise of his constitutional right to a jury trial.  Petitioner presented said arguments to the Second Department in Point IV of his brief on direct appeal; the Second Department upheld petitioner's sentence.  Muriel-Herrera, 892 N.Y.S.2d at 151.

Generally, where the sentence imposed falls within the range prescribed by state law, no constitutional issue is presented upon which habeas corpus relief can be granted.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  Here, petitioner's aggregate twelve-year sentence was considerably less than the maximum permissible sentence of twenty-five years for the class B violent felony conviction of first degree burglary.  See N.Y. Penal L. §§ 140.30; 70.02(3)(a).

However, petitioner also contends that his sentence–which falls within the permissible statutory range–was in retaliation for his rejection of a plea bargain.[18]  The Supreme Court has

---

[17]   In any event, the sentencing error did not constitute a double jeopardy violation.  The Fifth Amendment's prohibition on double jeopardy "protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense."  Boyd v. Meachum, 77 F.3d 60, 63 (2d Cir. 1996).  Here, although the trial court erroneously stated it was sentencing petitioner in connection with Court 10, the Appellate Division found that the sentencing court corrected its error in the Uniform Sentence and Commitment sheet.  Petitioner fails to rebut this presumptively correct factual finding with "clear and convincing evidence."  See 28 U.S.C. §2254(e)(1);  Nelson, 121 F.3d at 833.  Thus, the "amendment" did not constitute "prosecution" for the same offense after acquittal; rather, as the Appellate Division found, the sentencing court merely exercised its inherent power to correct a clerical error.

[18]   During a break in voir dire, the trial court noted petitioner's repeated rejections of the People's offer of eighteen years and the court's offer of ten years, and stated that petitioner's sentencing exposure "is up to forty years" (T. 61).

determined that due process is violated when a penalty is imposed upon a person for electing to exercise a constitutionally protected right, including the right to have a jury trial in a criminal case.  See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978).  "However, the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial."  Walker v. Walker, 259 F. Supp.2d 221, 226 (E.D.N.Y. 2003) (citation omitted).  See Brown v. Donnelly, 371 F. Supp.2d 332, 342 (W.D.N.Y. 2005) (rejecting petitioner's claim that he was sentenced vindictively for exercising his right to go to trial, "because the judge never stated or implied that the sentence was based on [petitioner's] refusal of the plea offer"); Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *9-10 (S.D.N.Y. Apr. 16, 2003) (rejecting defendant's argument that the disparity between the prosecution's pretrial plea offer (5-10 years) and defendant's sentence (25-50 years) suggested vindictiveness).  Here, apart from his conclusory allegation of retaliation, petitioner proffers no evidence to suggest vindictiveness or any other improper criterion influenced the sentence the trial court imposed.  In sum, the Appellate Division's decision upholding petitioner's sentence was neither contrary to, nor an unreasonable application of, federal law.  Accordingly, I conclude and respectfully recommend that petitioner's claim for habeas relief on the ground that his sentence was harsh, excessive and retaliatory must be dismissed.


## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has

failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).[19]

Dated:   November 20, 2013
            White Plains, New York

Respectfully submitted,

_____
Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

---

[19]      Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

A copy of this Report and Recommendation has been mailed to:

Luis Muriel Herrera
08-A-1013
Fishkill Correctional Facility
P.O. Box 1245
Beacon, N.Y. 12508